FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 20 2021

By: JAMES N. HATTEN, Clerk
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **JOHN DOE**,<br><br>        Plaintiff,<br><br>vs.<br><br>**MOREHOUSE COLLEGE, INC**.<br>(a Georgia Nonprofit Corporation)<br>**STEPHANE DUNN** in her official<br>capacity as Professor of English<br>and Academic Program Director<br>of the Cinema, Television and<br>Emerging Media Studies Program<br>and member of Fall 2018 CTEMS<br>Admission Committee; **AVERY**<br>**WILLIAMS** in his official capacity<br>as an Assistant Professor of<br>English, faculty member in the<br>Cinema, Television and Emerging<br>Media Studies Program and<br>member of the Fall 2018 CTEMS<br>Admissions Committee.<br>        Defendants. | **Civil Action File No.:**<br><br><br>**Jury Trial Demanded**<br><br>1:21-CV-0331 |

## COMPLAINT

**COMES NOW** John Doe, Plaintiff, by and through counsel, and

hereby shows this Honorable Court the following:

## JURISDICTION AND VENUE

**1.**

The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  This is a civil action posing a federal question arising under 29 U.S.C § 794 (§ 504 of the Rehabilitation Act of 1973) and its implementing regulations 45 C.F.R. § 84 et. seq. (specifically §§ 84.3(f); 84.3(h); 84.3(j)(1); 84.3(3); 84.4; and 84.41) and Title VI of the Civil Rights Act of 1964 (42 U.S.C.A. §§ 2000d to 2000d-7).

## 2.

This civil action also poses a state claim for fraud and deceit under O.C.G.A. 51-6-2(a).

## 3.

Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the District, and the Defendants are subject to personal jurisdiction in the District.  Defendant Morehouse College is located in the District where Defendants Stephane Dunn and Avery Williams are employed.

## PARTIES

## 4.

The Plaintiff, John Doe, is a former student at Morehouse College
and a current resident of Los Angeles, California. During all relevant times
relevant to this complaint, the Plaintiff was a student of Morehouse College,
Inc. domiciled at 830 Westview Dr. SW, Atlanta, Georgia 30314.

**5.**

Defendant, MOREHOUSE COLLEGE, INC., is a Georgia nonprofit
corporation located at 830 Westview Drive, SW, Atlanta, GA 30314 and is
subject to the jurisdiction of this Court.

**6.**

During all relevant times relevant to this complaint, Defendant,
STEPHANE DUNN, was, and current is, a Professor of English and
Academic Program Director of the Cinema, Television and Emerging Media
Studies Program at Morehouse College, Inc. a Georgia nonprofit
corporation located at 830 Westview Drive, SW, Atlanta, GA 30314 and is
subject to the jurisdiction of this Court.

**7.**

During all relevant times relevant to this complaint, Defendant,
AVERY WILLIAMS, was, and currently is, an Assistant Professor of English
and a faculty member in the Cinema, Television and Emerging Media
Studies Program at Morehouse College, a Georgia nonprofit corporation

Page | 3

located at 830 Westview Drive, SW, Atlanta, GA 30314 and is subject to the jurisdiction of this Court.

## **GENERAL FACTUAL ALLEGATIONS**

### **8.**

The Plaintiff was a student at a Morehouse College, Inc. ("Morehouse") from August 2016 to May 2020.  Having made his first short film in 2009 at age 10, the Plaintiff accepted admission to attend Morehouse College for the specific purpose of studying film in the Cinema, Television and Emerging Media Studies Program ("CTEMS"), and he moved from Los Angeles to Atlanta to achieve that goal.  **(See Exhibit D)**

### **9.**

On November 11, 2018, the Plaintiff applied to be accepted to the CTEMS program by emailing an application package to ctemsappfall18@gmail.com  as prescribed by the department's admission flyer.

### **10.**

The application package included an information sheet **(See Exhibit C)** and multiple essays **(See Exhibit D)**.

### **11.**

The Plaintiff disclosed in his application essay that in 2018 he had tested positive for the Human Immunodeficiency Virus ("**HIV**") in the Morehouse Community Health Center and since that time he dealt with depression and increased anxiety.  **(See Exhibit D)**

### 12.

The Plaintiff disclosed that his grade point average was 2.71 on the information sheet.  **(See Exhibit C)**

### 13.

On December 4, 2018, four members of the CTEMS Admission Committee convened a meeting to review student applications for admissions to the CTEMS program.

### 14.

The four members on the CTEMS Admission Committee included: Defendant Stephane Dunn, who serves as the CTEMS Academic Program Director; Defendant Avery Williams who serves as a CTEMS Faculty Member; CTEMS Faculty Member Eric Baker; and Academic Advisor Onoriode Evwaraye **(See Exhibit A)** who was not a CTEMS Faculty Member, but who was assigned to be on the CTEMS Admission Committee by Morehouse leadership as a result of admissions-related discrimination complaints lodged against Defendant Stephane Dunn by Morehouse

students Glen La'Veau and Anthony Raggs, Jr, and his father Anthony Raggs, Sr., on July 20, 2918 at 8:16pm, and the legal action threatened by Beatrice Louissaint on August 20, 2018 at 12:58pm regarding the same matter.

**15.**

While the CTEMS Admission Committee reviewed the Plaintiff's application, Defendant Avery Williams brought up the Plaintiff's HIV status and suggested that the admission committee should not accept the Plaintiff as a CTEMS student because he was HIV positive.

**16.**

Avery Williams stated, "I don't know if we should admit a student who is HIV positive. CTEMS is a very demanding major."

**17.**

Eric Baker, who was disgusted and angered, pointed out to Avery Williams and Stephane Dunn, "we can't deny a student admittance to CTEMS because he is HIV positive.

**18.**

Avery Williams stated that it was okay for the committee to consider the Plaintiff's HIV status when deciding if he could become a CTEMS major because the Plaintiff "**put it out there**" in his essay.

**19.**

Outraged, Eric Baker pointed out the impropriety of such a point by stating that it was "morally wrong and probably illegal."

**20.**

Onoriode Evwaraye told Avery Williams and Stephane Dunn, "[Mr. Baker] is right" and concluded his comments by stating that the committee could not make a decision regarding the Plaintiff's application based on his HIV status.

**21.**

Then, Avery Williams argued that the Plaintiff should not be admitted because in the Plaintiff's essay he stated that he suffers from occasional bouts of depression, which was related to the Plaintiff's HIV diagnosis.

**22.**

Again, Onoriode Evwaraye told Avery Williams and Stephane Dunn that managed bouts of depression was also a diagnosis that the committee was not allowed to use as a basis to deny the Plaintiff's application for admission to the CTEMS program at Morehouse College.

**23.**

"Only after this final exchange did Avery Williams and Stephane Dunn relent, and Doe was unanimously voted to become a CTEMS major,

with Onoriode Evwaraye, Avery Williams, Stephane Dunn and [Eric Baker] all yes." (**See Exhibit A**)

**24.**

The CTEMS Admissions Committee adjourned without making any further decisions regarding the Plaintiff's admission application and did not convene any subsequent meetings regarding the matter.

**25.**

The CTEMS Admission Committee only discussed the Plaintiff's HIV status and his occasional managed bouts of depression, and no other factors, when reviewing the Plaintiff's admission application, and when making its admission decision.

**26.**

On January 22, 2019 at 9:42am, the Plaintiff received an email **(See Exhibit B)** from the CTEMS Committee (ctemsappfall18@gmail.com) indicating that "[t]he major committee received a range of applications and did not approve yours." The Defendants rejected the Plaintiff's admission application without reconvening the CTEMS Admission Committee to reconsider or reverse its prior decision admitting the Plaintiff to the CTEMS program.

**27.**

In January 2020, Eric Baker noticed that the Plaintiff was not on the roster for his CTEMS class and was concerned because he remembered the issues regarding his application.

**28.**

Eric Baker reached out to the Plaintiff and inquired about why he wasn't on the CTEMS course roster.

**29.**

"When I asked him why he wasn't on the CTEMS course roster, [the Plaintiff] informed me that he had been rejected as a CTEMS major." **(See Exhibit A)**

**30.**

"[The Plaintiff] replied that when all of the other applicants had received acceptance or rejection letters, he hadn't received anything at all. So, he emailed the CTEMS Director, Stephane Dunn to inquire about his application. [The Plaintiff] said that Dunn then sent him an email stating that the CTEMS Committee had rejected [the Plaintiff's] application.

**31.**

Morehouse College is a private entity which receives federal financial assistance. According to the Morehouse College Office of Sponsored Programs, Morehouse receives financial assistance from the following

federal agencies: The Department of Health and Human Services[1]; The

U.S. Department of Energy[2]; The National Science Foundation[3]; The

Department of Education[4]; The National Endowment for the Arts[5]; The

National Endowment for the Humanities[6]; The Department of the Interior[7];

The Department of Agriculture[8]; The U.S. Nuclear Regulatory

Commission[9]; and The Department of Defense[10].  Each agency has

regulations implementing § 504 of the Rehabilitation Act, which have been

cited, respectively.

## SPECIFIC ALLEGATIONS

### 32.

The Plaintiff alleges that the Defendant specifically intended to

discriminate against him by (1) unilaterally rejecting his CTEMS application

(2) after the CTEMS Admissions Committee had decided to accept him in a

unanimous vote.

### 33.

---

[1] 45 C.F.R. §§ 84.1 to 84.47
[2] 10 C.F.R. §§ 1040.61 to 1040.74
[3] 45 C.F.R. §§ 605.0 to 605.61
[4] 34 C.F.R. §§ 104.1 to 104.47
[5] 45 C.F.R. §§ 1151.1 to 1151.44
[6] 45 C.F.R. §§ 1170.1 to 1170.55
[7] 43 C.F.R. §§ 17.200 to 17.280
[8] 7 C.F.R. §§ 15b.1 to 15b.42
[9] 10 C.F.R. §§ 4.101 to 4.233
[10] 32 C.F.R. §§ 56.1 to 56.10

The Plaintiff alleges that the Defendants specifically intended to discriminate against him because he was HIV positive by only considering his HIV diagnosis, and by advocating to reject him because he was HIV positive, when the CTEMS Admissions Committee considered his application.

**34.**

The Plaintiff alleges that the Defendant, Stephane Dunn, was acting within the scope of her employment as Academic Program Director of CTEMS on January 22, 2019 at 9:42am when she rejected the Plaintiff's CTEMS application via email after having participated in a unanimous vote to accept him as a CTEMS major.

**35.**

The Plaintiff alleges that he was qualified to be a CTEMS major because the CTEMS Admissions Committee voted unanimously to accept him as a CTEMS major.

**36.**

The Plaintiff alleges that the Defendant did not have a posted criterion for admissions.

**37.**

The Plaintiff alleges that the Defendant, Morehouse College,

discriminated against him by denying his CTEMS application because he

was HIV positive after the CTEMS Admissions Committee determined that

he was qualified to be a CTEMS major by a unanimous vote to admit him.

## COUNT ONE

## VIOLATION OF § 504 OF THE REHABILITATION ACT OF 1973
## AND ITS IMPLEMENTING REGULATIONS

### 38.

The allegations of paragraphs 1 – 37 are realleged and incorporated

herein by reference.

### 39.

29 U.S.C § 794 provides that: "No otherwise qualified individual with

a disability in the United States, as defined in section 705(20) of this title,

shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance or

under any program or activity conducted by any Executive agency or by

the United States Postal Service."

### 40.

45 C.F.R. §84.4 provides that: "No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity receiving federal financial assistance."

### 41.

The Plaintiff disclosed his HIV positive status and his related, occasional bouts of depression in his CTEMS admission application.

### 42.

The Defendants rejected the Plaintiff's CTEMS admission application and excluded him from participation in its CTEMS program because he is HIV positive in violation of 29 U.S.C § 794 and 45 C.F.R. §84.4.

### 43.

The Plaintiff was a handicapped person within the meaning of 45 C.F.R. § 84.3(j)(1) which provides: "[h]andicapped person means any person who (i) has a physical or mental impairment which substantially limits one or more major life activities. The ADA Amendments Act of 2008 clarifies that "major life activities" includes "the operation of a major bodily function, including ... functions of the immune system." 42 U.S.C. § 12102(2)(B). As HIV critically impacts the immune system, it is within the

ambit of the statute. *Henderson v. Thomas, 913 F. Supp. 2d 1267 (M.D. Ala. 2012).*

**44.**

The Plaintiff was a qualified handicapped person within the meaning of 45 C.F.R. § 84.3(I)(3) which provides that: "A qualified handicapped person means, [w]ith respect to postsecondary and vocational education services, a handicapped person who meets the academic and technical standards requisite to admission or participation in the recipient's education program or activity."  The Plaintiff was admitted by the CTEMS Admission Committee by a unanimous vote because he met the selection criteria and was qualified.

**45.**

The Defendant is a post-secondary education program within the meaning of 45 C.F.R. § 84.41 which provides: "Subpart E applies to postsecondary education programs or activities, including postsecondary vocational education programs or activities, that receive federal financial assistance and to recipients that operate, or that receive federal financial assistance for the operation of, such programs or activities.

**46.**

The Defendant receives federal financial assistance within the meaning of 45 C.F.R. § 84.3(h) which provides: "Federal financial assistance means any **grant,** loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the department provides or otherwise makes available assistance in the form of: (1) funds; (2) services of federal personnel; or (3) real and personal property or any interest in or use of such property […].

## 47.

The Defendant is a recipient within the meaning of 45 C.F.R. § 84.3(f) which provides: "Recipient means any state or unit of local government, any instrumentality of a State or unit of local government, any public or **private agency**, institution, organization, or other public or **private entity**, or any person to which federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee of a recipient, but excluding the ultimate beneficiary of the assistance." Morehouse is a private entity and a recipient of federal financial assistance.

## 48.

The Defendants' action of wrongfully and unlawfully rejecting the Plaintiff's CTEMS admission application violated the Plaintiff's civil rights under § 504 of the Rehabilitation Act of 1973.

**49.**

The Plaintiff has suffered emotional distress, increased anxiety and mental anguish, as a result of being discriminated against because of his HIV status by an alma matter that was once beloved. The Plaintiff revealed his inner most secret to the Defendant and the Defendant unlawfully used it against him.

## COUNT TWO

## FRAUD AND DECEIT

**50.**

The allegations of paragraphs 1 – 47 are realleged and incorporated herein by reference.

**51.**

The Defendant, Stephane Dunn, misrepresented a material fact when she emailed the Plaintiff a rejection notice after the admissions committee voted to accept him.

**52.**

The Defendant's misrepresentation was made to induce the Plaintiff to act by becoming a student in another academic program.

**53.**

The Plaintiff acted upon the Defendant's misrepresentation by becoming a student in another academic program.

**54.**

The Plaintiff was injured by relying on the Defendant's misrepresentation because he paid finish to his degree in another academic program when the CTEMS Admissions Committee vote entitled him to finish his degree as a CTEMS major.

**55.**

The CTEMS Admission Committee vote entitled the Plaintiff to complete his studies as a CTEMS major and the Defendants defrauded the Plaintiff of his tuition and fees when they unlawfully and wrongfully rejected his CTEMS admissions application after he had been admitted to the program.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests a judgment against the Defendants as follows:

1. Compensatory damages in the form of a reimbursement for tuition, room and board charges from January 2019 through May 2020 in the amount of $81,000 because the CTEMS Admission Committee vote entitled him to complete his studies as a CTEMS major and Stephane

Dunn and Morehouse College defrauded the Plaintiff and took that away from him by unlawfully rejecting his application. The Defendants should be made to forfeit their profits and should not be allowed to benefit from their deception, discrimination, and bad faith.

2. Emotional distress damages in the amount of three million dollars ($3,000,000) because the Defendants had notice from the Plaintiff's essays that he would suffer emotional distress from HIV-related discrimination, and they did it anyway in an act of bad faith, and they never took any steps to undo or redress the harm.

3. A published criterion for admission to the CTEMS program.

4. The establishment of an appeals process for the CTEMS program application process.

5. A CTEMS application appeals committee that includes student leaders and faculty.

6. A trial by jury.

7. Cost of this action, including attorney's fees; and

8. Such other relief that this Court deems proper and just.

Respectfully Submitted,

Attorney for the Plaintiff

BY: _____

**DAMON M. SCOTT**
Ga. Bar No. 964680

**The Law Office of Damon M. Scott, LLC**
3324 Peachtree Road, Suite 2616
Atlanta, GA 30326
damon@damonmscott.com
312-217-2732

# EXHIBIT A

## WITNESS AFFIDAVIT

My name is Eric L. Baker. My industry "pen" name is Adisa Iwa. I am a Faculty Member at Morehouse College in the Cinema, Television and Emerging Media Studies (CTEMS) Program. I am one of the founders of the program. The following are matters that I personally observed. In November 2018, I was on the CTEMS admissions committee with CTEMS Department Chair Stephane Dunn, CTEMS Faculty Member Avery Williams, and Onoriode Evwaraye. During the CTEMS Committee meeting to decide which students would be accepted into CTEMS, we began to discuss the application of a student whose name is being replaced with the pseudonym "John Doe" or "Doe."

Students are required to apply to the program to declare CTEMS as a major. CTEMS majors develop skills in directing, screenwriting and storytelling as a foundation for the intellectual and artistic study of film and television. The application requires students to submit an answer sheet detailing their GPA along with essays regarding their interest in filmmaking. In his essays, Doe disclosed that he was HIV positive to demonstrate his human vulnerability, and ultimately his resilience and determination to become a CTEMS major.

Doe has taken two classes with me: Intro to Television and Intro to Film. He earned an A, and an A+, respectively.

While discussing Doe's application, Avery Williams brought up Doe's HIV positive status as a factor we should consider. Meaning, perhaps we should not accept Doe as a CTEMS major because he's HIV positive.

Williams: You know Doe is HIV positive, right?

Baker: What does that have to do with anything?

Williams: Well...I don't know if we should admit a student who is HIV positive. CTEMS is a very demanding major, and--

Baker: What are you talking about? We can't deny a student admittance into CTEMS because he's HIV positive!

Williams: Why not? He's the one who put it out there. He talked about being HIV positive in his essay, so that means it's a factor we can use to reject him.

Baker: No it doesn't mean that! That's morally wrong, and it's probably illegal!

Williams: But--

Evwaraye: No. Adisa is right. We cannot reject him based on his HIV status.

Williams: Well...what about rejecting him because of the depression he talks about in his essay?

Evwaraye: No. It's illegal to deny him admittance because of clinical depression, too.

Williams: Fine. Whatever.

Only after this final exchange did Williams and Dunn relent, and Doe was unanimously voted to become a CTEMS major, with Evwaraye, Dunn, Williams and I all voting "Yes."

In January of 2020, I noticed that Doe was not on the roster for my CTEMS class. Remembering the drama around his HIV status, I was immediately concerned. I found Doe's phone number on his application, and I called him. When I asked him why wasn't he on the CTEMS class roster, Doe informed me that he had been rejected as a CTEMS major. I responded, "That's not true. The CTEMS Committee voted you in."

Doe replied that when all of the other applicants had received acceptance or rejection letters, he hadn't received anything at all. So, he emailed the CTEMS Director, Stephane Dunn to inquire about his application. Doe said that Dunn then sent him a email stating the CTEMS Committee had rejected Doe's application. The only factor or performance metric discussed to make decisions regarding John Doe's CTEMS application was his HIV status, and its residual effects.

Again, these are all matters that I personally observed, and this is not the first time I have witnessed Williams and/or Dunn discriminating against a Morehouse student with a protected status.

Further, Affiant sayeth naught.

Affiant

Eric L. _____ AKA Adisa Iwa

Sworn and subscribed before me

this _17_ day of _January_ 20 _21_

_Katrina Young_
Notary Public

# EXHIBIT B

**From:** CTEMS Morehouse <ctemsappfall18@gmail.com>
**Sent:** Tuesday, January 22, 2019 9:42 AM
**To:**
**Subject:**

Dear Mr.

Thank you for your application and your interest in the CTEMS program. The major committee received a range of applications and did not approve your application. Unfortunately, difficult choices are part of this process. Please consult the division advisor Mr. Evawaraye in Wheeler Hall if you need further assistance making sure you continue your studies in your other current or another focused major area. Regardless of your major, pursue your career goals with confidence. CTEMS faculty mentoring and some key program opportunities are offered to all students. With integrity, focused work, and a passion for learning and pursuing this career area path, you will realize your goals.

CTEMS COMMITTEE

This is a no reply email address. This communication is confidential intended for the email address owner of the listed email address.This communication is confidential intended for the email address owner of the

Copyright © 2003-2021. All rights reserved.

# EXHIBIT C



**MOREHOUSE** COLLEGE
**CINEMA, TELEVISION &**
**EMERGING MEDIA STUDIES**

# Information Sheet

## (All items should be addressed)

<u>**Please Print**</u>

Name _____     _____ _____ _____     DATE 11/20/2018
         LAST                    FIRST                M.I.

Morehouse ID Number _____ )fficial Classification __Junior__

Local Address __530 Westview Dr. SW__
                    Street

__Atlanta, GA  30314_____     City/State/Zip Code

Local Telephone Number _                    _

Previous Advisors (List Most Recent First) __Jacquelynn Davis_____

Current Major __Undeclared_____     Minor (if any) __Theatre_____

Expected Date of Graduation __May  2020_____

Currently Employed? Off-Campus ____N/A_____ Work-Study ___N/A_____

Have you taken any film and/or creative writing courses? __Intro to Film, Intro to TV__
                                    __Creative Writing: Fiction & Drama__

Grades: ENG 101 _____ ENG 102/ ENG 103 __B —__

Current Official Cumulative GPA __2.71__

Student Signature _____          __

# EXHIBIT D

Essay 1:

I intend to pursue a career as a screenwriter and director of photography after graduating from Morehouse College. I created my first short film in 2009 as a last minute Father's Day present. It told the story of me and my siblings in a dismal alternate universe in which we did not have our father around. I did not have the greatest confidence in the final product, my family expressed then that I should consider becoming more seriously involved with filmmaking. In middle and high school, I took every opportunity I to create video projects instead of traditional poster boards. From my perspective as a queer-identifying Black man, there are many stories I wish I had seen on television and in movies that are only now making their way to the forefront of mainstream media. As a writer, the words put into your screenplays and manuscripts can make a direct impression on people that take the time to listen to and read them. In such a position, I find it important to tell stories that will entertain while telling stories of people that the trends in storytelling today overlook. The focus on storytelling as the foundation of the CTEMS program will help me put my ideas to paper with the skill to develop characters and stories that feel authentic to the human experience and can impact the minds of readers and viewing audiences.

Photography has become one of my favorite hobbies in recent years. I bought my first camera, a used Canon SL1 from Amazon, with money I saved from my 17th birthday. I've used it to capture family and collegiate events, fun photo shoots and headshots for friends; even a wedding. The photos I have captured over the years all tell their own stories. As a Director of Photography in the industry, I would apply my love for the art to the television and film mediums. Visual and aesthetic decisions impact the storytelling and reception of a movie as much as the writing does. The mission of the CTEMS program includes a focus on the artistic aspect of filmmaking which creates an opportunity for me to become exposed to a wealth of new

and old visual styles and techniques. Classes within the program, such as Film Criticism &
Theory, will provide me with a background on the intent behind decisions made and risks taken
by filmmakers that have made their television shows and films critically praiseworthy.

Essay 2:

Building self-confidence has been one of the toughest challenges in my academic career.
Fear of judgment has kept me from pushing past my comfort zone in the classroom. While I was
never picked on for my intellectual ability, bullying regarding my self-expression greatly
diminished my desire to put myself out there. Many teachers and professors express that there
are no stupid questions that can be asked, but I've often opted to let my fears stop me from
raising a hand. Even in moments where I knew the answer to a question, I assumed that a smarter
student in the class would find my bold declaration of an incorrect answer amusing. This feeling
plagued me in high school, although I have managed it much more maturely in college. The
realization that I have to develop my skills as an individual, and that I cannot do so while
operating out of fear, has motivated me to become more vocal inside and outside of the
classroom. I've joined campus organizations such as Safe Space, the LGBTQ+ collective at
Morehouse, which has given me a place to have a voice on issues that matter to me and to be a
voice for change in my community. Through this experience, I have begun to work toward an
unwavering confidence expressing in my feelings and ideas, which has translated to my
participation in the classroom.

In 2018, I encountered a challenge that nothing in my adolescence could have prepared
me for. I tested positive for Human Immunodeficiency Virus in the Morehouse College Health

Center. My initial reaction to the news was calm and almost detached. As a young black man, I was acutely aware of the stigma that I would face from within my own community at Morehouse. Since then, I have dealt with depression and increased anxiety. This has in one way or another affected my ability to give one-hundred percent of myself to my academics. In a way, it was a call to action. Although it is not a death sentence, awareness of mortality and constant attention to my physical and mental wellbeing became real for me at 19 years old, and I was eventually forced to recognize that I must make the most of the long and healthy life that I have ahead of me. I've taken much time and devoted it to exploring healthy methods of self-care and use photography as an outlet. I have developed and maintained a strong support system in my close friends at Morehouse, and those around me continue to check on me and my progress toward getting my life back. I work harder every day to move on from the trauma of the diagnosis and to push myself to excel in school.

Essay 3:

This motel room is the dingiest I've worked from. The wallpaper is beige, but I can tell it started out white. He's late ten minutes, but what position am I in to flake on him? Mona Lisa by Nat King Cole slinks from the RCA radio in the corner, can't think of a man with a smoother voice. Client is late half an hour, and I have someone booked after. Four knocks at the door. My breath catches in my throat for a moment, the nerves don't get better with time. I peek out with the chain locked, just to catch a glance of him. I'd bet fifteen dollars he pulled up in a Coupe deVille.

"Half up front," I say.

He pushes a bill into the crack in the door. President Frankin and I stare into each other's eyes for a moment. I grab for it and shut the door. For a second, I think that I'm fine with leaving

him there with the door shut, but if I get through this, there's more where that came from. I lead him in from the hallway, and he seems relieved that I opened up. I sense from this stiffness that he's afraid or unsure what to do next, so I drop my top.

"I'm K. What's your name sugar?" I ask, lighting a cigarette from the side table.

"R-Richard," he stammers, "You can put that back on."

He hands me my shirt from the floor. My instincts say to take offense, that he doesn't like what he sees. He probably sees me as another Jap. But he's paying. I feel his eyes meticulously scanning me as we take a seat on the bed.

"Why are you here?" he asks.

"To make ends meet," I reply.

"I know that much," he scoffs, "but I want to know about you."

I've never heard that from a client before. But I haven't been asked about me by anyone for as long as I can remember.

"My family is just moving back from Arizona. We were sent to one of the camps," I say. He nervously shifts in his seat. "My parents lost their tailoring shop."

"Sorry to hear that. Everyone okay?" He adjusts his collar; there's a ring on his left hand.

"My mom is are alright, considering the shop. My sister was too young to remember the earliest days. Those were the darkest." I take another pull of my cigarette. "You have a wife?"

He shifts to his right, and sighs. "I don't think I do anymore. She left, said the firm was eating up too much of my time. I just need someone to talk to."

"Well, did you have any kids?"

"No kids. I'm the youngest outta my siblings, and they all have at least two. You have any?" I'm back on the train away from Los Angeles toward the cage with Elisa in my lap.

"Yeah. My baby sister's a genius."

"What's her name?"

"Elisa. She's in 5th grade. Knows math better than I could ever hope to. She's going to one of those universities if I have anything to do with it. Schools in the camps weren't the greatest, so I'm not so interested." Richard finally looks me directly in the eyes, into the soul of the person that I am and not the body. It makes me feel lighter than I did before he got here.

"Well I hope you can help her reach that," he says.

I catch the clock on the wall is three minutes to 1. I have no choice but to cut him loose, right when I was feeling good again. Been while since that. "It's about that time Rich. I appreciate the chat."

He stands, the smile he suppresses suggests gratitude. "If you need a job, the firm could use a receptionist," He says handing me a tattered business card and two more hundred bills. "Thank you, K." He leaves me, just as I was before. I choose not to answer the next four knocks.